IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

SALVERTORE BROWN,              :
    Plaintiff                  :
                               :
    v.                         :    CIVIL NO. AMD 05-1685
                               :
KENNETH TREGONING,             :
    Defendant                  :
              ...o0o...

MEMORANDUM OPINION

Plaintiff Salvertore Brown, who is African-American, was employed at the Carroll County, Maryland, detention center ("the DC"). After his employment was terminated (during the process of which he claims he was denied a promotion), he timely exhausted his administrative remedies and then instituted this case against the county sheriff asserting failure to promote and disparate discipline claims under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e, *et seq*. Discovery has concluded and defendant's motion for summary judgment is now before the court; a hearing is not necessary.[*] The motion shall be granted for the reasons stated within.

Brown was a lieutenant and supervisor at the DC. He had begun working at the DC

---

[*]Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986). A fact is material for purposes of summary judgment, if, when applied to the substantive law, it affects the outcome of the litigation. *Id*. at 248. Summary judgment is also appropriate when a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

in 1993 and had been promoted several times, including at least once while defendant Tregoning was his superior. In May 2003, Deputy First Class Laurie Moody filed a sexual harassment complaint against Brown.  The complaint alleged that Brown repeatedly asked Moody for dates, even after she refused him; made multiple calls to her home and to her parents' home; and made various sexually inappropriate statements and inquiries regarding Moody's personal life.

The sheriff referred the investigation of the Moody complaint to the sheriff's office of neighboring Frederick County. The investigation was conducted by George Stottlemyer. Stottlemyer found that there was insufficient evidence to sustain a finding that Brown had violated the sexual harassment policy. Nonetheless, based on witness interviews and Brown's own admissions, Stottlemyer also concluded that Brown displayed poor judgment as a ranking member of the command staff in his behavior toward Moody. Stottlemyer recommended that Brown be found guilty of unbecoming conduct and harassment. Stottlemyer's findings were accepted and Brown's superior issued a written reprimand and assessed loss of three days leave. Brown was warned that severe disciplinary action would be taken in response to any repeated misconduct.

Shortly after Brown was disciplined, he sought a promotion to captain. To be eligible for promotion, candidates had to have held the rank of lieutenant in the DC for at least one year.  The promotional process consisted of an oral examination (95% of score) and a written examination (5% of score). The oral examination was conducted by a three-member board

"consisting of representatives from the rank of Correctional Captain or above from outside correctional facilities." Brown's supervisors were not involved in the scoring process. This process created an eligibility list that would be in effect for one year. Any captain's positions that became available during that year would be filled from candidates on the list. At the end of that period, the list would be discarded and the process would start again. At no time did simply sitting for the test guarantee promotion to caption.

Brown's scores placed him in the "qualified" category. There were two other lieutenants whose scores were higher than Brown's and were deemed "well-qualified" and placed ahead of the plaintiff on the eligibility list. Those lieutenants were both white. At some point during this process, Brown was told that he was qualified and that he would be selected for captain. When Brown was deemed qualified for captain there was only one captain's position available and the first candidate on the eligibility list was promoted. The other candidate still has not been promoted to captain, even though he has continued to be rated as "well-qualified" on the updated eligibility lists.

Meanwhile, in or about May 2003, while the investigation into the Moody complaint was still pending, Deborah Braman, an administrative assistant at the DC, filed a complaint with the warden, alleging that Brown had harassed and made derogatory comments about Braman to other employees while trying to learn what she (Braman) had revealed in connection with the Moody investigation. An investigation determined that Brown had used poor judgment in making negative comments, which had been overheard by other

employees,  about Braman,.

Later, in November 2003, Moody filed a second complaint. This one alleging that Brown had retaliated against her for her initial sexual harassment complaint. Soon thereafter, Paula Hyde, another DC employee, also filed a complaint alleging that Brown was belittling her in front of other DC employees. Hyde eventually admitted that she and Brown had been in a consensual romantic relationship at a time when she was Brown's subordinate.  This information was not disclosed during the initial Moody investigation.

All of  these later complaints were referred for investigation, this time to Captain Steven Bodway, a deputy sheriff in neighboring Harford County. In the course of the investigation, Bodway came to believe Brown was attempting to interfere with his investigation because Brown questioned various interviewees about what they told Bodway. As a result, Brown was suspended pending the outcome of the investigation.

Bodway found that Brown had engaged in sexual relationships with multiple subordinate DC employees and that Brown's interactions with those and other employees demonstrated a pattern of conduct whereby Brown sought to "control, suppress and manipulate" DC employees. The final report found that Brown was guilty of three charges of unbecoming conduct in violation of DC rules and regulations.  On April 20, 2004, the warden sent Brown a notice of disciplinary action together with the results of the investigation. The notice reminded Brown of the previous warning regarding unbecoming conduct as a result of the Moody incident. Brown was placed on administrative leave until

April 27, after which his employment would be terminated.

Brown was given an opportunity to present evidence to challenge the decision to terminate him, but the warden found termination to be the only viable option. On April 23, 2004, Brown requested an appeal of the decision to terminate his employment. Sheriff Tregoning upheld the termination. Brown then filed a petition for judicial review to the Circuit Court for Carroll County, pursuant to the Carroll County personnel grievance procedures. On February 23, 2005, the circuit court upheld the decision to terminate Brown.

To prevail on a discriminatory failure to promote claim, a plaintiff must be able to demonstrate that she or he: (1) is a member of a protected class; (2) applied for the position in question; (3) was qualified for the position; and (4) was rejected for the position under circumstances giving rise to an inference of unlawful discrimination. *See, e.g., Williams v. Giant Food, Inc.*, 370 F.3d 423, 430 (4th Cir. 2004). Here, Brown's claim fails at the fourth prong. Brown has presented no evidence that the failure to promote him to captain gives rise to an inference of racial discrimination. To begin with, there was no position to which Brown could have been appointed. Even if there had been an available position, however, Brown was not the most qualified person for the position under the well-established promotion guidelines. *See Amirmokri v. Baltimore Gas & Elec. Co.*, 60 F.3d 1126, 1129 (4th Cir. 1995).

The promotion process was governed by a promotional bulletin that was posted in August 2003. As a result of the process, two white candidates were listed on the eligibility

list ahead of Brown.  Brown has made no allegation that the promotion process was racially biased. When a vacancy became available, the first candidate on the eligibility list was promoted. When the list expired in October 2004, no one else had been promoted. Because the second candidate on the list, who was more-highly ranked than Brown, still had not been promoted by the time Brown was terminated, there simply is no inference of unlawful racial discrimination. The fact that Brown was lead to believe he would be promoted does not alter this analysis

Brown's disparate discipline claim fails as well. In order to establish a case under this theory,  Brown must show that he: (1) is a member of a protected class; (2) was qualified for his job and was performing his job satisfactorily; (3) was terminated; and (4) other employees who were not members of the protected class were not terminated under the same or similar circumstances. *Hughes v. Bedsole*, 48 F.3d 1376, 1383 (4th Cir. 1995). Brown cannot satisfy the second or fourth prongs. Manifestly, he was not performing his job satisfactorily and furthermore, he has produced no evidence that other individuals who were not of the same protected class were retained under the same or similar circumstances.

Clearly, Brown's job performance was not satisfactory. He had been disciplined multiple times for abuse of power and interfering with an investigation. The record shows that Brown repeatedly violated the rules of the DC and impeded the investigatory process, showing little respect for his role as a supervisor or as a member of the work community.

Furthermore, Brown has presented no evidence that there were white officers who

committed similar acts and were not terminated. Brown asserts a troubling allegation about

an officer Phipps's possible sexual harassment and continuing employment. But it is just

that: an allegation. He presents no evidence of its factual basis. His opposition to the present

motion, which totals a scant three pages and an unexecuted affidavit, presents nothing more

than Brown's own statements that the alleged similar behavior occurred. This is woefully

insufficient to generate a genuine dispute of material fact. *See Evans v. Techs. Applications*

*& Serv. Co.*, 80 F.3d 954, 962 (4th Cir. 1996); *Ingram v. Giant Food, Inc.*, 187 F. Supp.2d

512, 516 (D. Md. 2002). Accordingly, Brown's claim based on disparate discipline fails.

For the reasons set forth, defendant is entitled to judgment as a matter of law.


Filed: March 7, 2007                                       /s/
                                        ANDRE M. DAVIS
                                        UNITED STATES DISTRICT JUDGE